WEST VIRGINIA PULP & PAPER CO. v. CHEAT MOUNTAIN CLUB.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1914.)

No. 1206.

1. LANDLORD AND TENANT (§ 47*)—GAME PRESERVE—INTERFERENCE BY LANDLORD.

Where a tract of forest land, remote from a railroad, was leased to a club for fishing and hunting, subject to the owner's right to prevent waste, farm, and conduct lumbering operations on the land, the owner was bound to exercise its rights reasonably and not arbitrarily and had no right to interfere with a ten-acre cleared tract around the clubhouse used for a garden and pasture.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 112, 113; Dec. Dig. § 47.*]

2. LANDLORD AND TENANT (§ 47*)—USE OF PREMISES.

Where certain forest land was leased to a club for hunting and fishing and the construction and use of certain camps and lodges thereon, subject to the landowners' right to use the land as lumbermen, farmers, or grazers, evidence *held* insufficient to show a necessity on the part of the owners to use a cleared ten-acre tract around the clubhouse for farming purposes, so as to entitle it to forbid the further use of such tract by the club.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 112, 113; Dec. Dig. § 47.*]

3. WATERS AND WATER COURSES (§ 158½*)—LEASE OF RIGHTS—REMEDY OF LESSEE—INJUNCTION.

Where a lease of forest land for hunting and fishing authorized the lessee to construct and maintain a fish hatchery on the land, it was en-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

titled to maintain a suit for injunction restraining the landowner from polluting the streams as the result of conducting certain lumbering operations on the land.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. § 158½.*]

4. LANDLORD AND TENANT (§ 134*)—GAME PRESERVE—TAKING TIMBER—REPAIR OF BUILDINGS.

Where a lease of certain forest land for hunting and fishing for 50 years provided that the lessee might take timber from the land to build one or more camps or lodges, etc., the lessee was entitled to timber from the land to rebuild and repair the lodges so constructed.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 482–485; Dec. Dig. § 134.*]

5. LANDLORD AND TENANT (§ 132*)—ENJOYMENT OF PREMISES—INTERFERENCE BY LANDLORD—INJUNCTION.

Where complainant held a lease of the hunting and fishing privileges of an extensive forest tract with the right to construct and maintain lodges, fish hatchery, etc., it was not barred of the right to an injunction to restrain the landowner from taking possession of all of the land except that covered by complainant's clubhouse or from depriving it of the use of timber to keep its buildings in repair and from polluting the streams, on the ground that complainant had an adequate remedy at law.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 460–464, 467–469, 1198; Dec. Dig. § 132.*]

6. INJUNCTION (§ 48*)—THREATENED TRESPASS.

The rule that one person cannot take the property of another without his consent, or continually trespass thereon and compel the owner to accept money in satisfaction, applies where the threatened trespass will result in depriving complainant of the enjoyment of a property right.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 101; Dec. Dig. § 48.*]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Suit in equity by the Cheat Mountain Club against the West Virginia Pulp & Paper Company. Decree for complainant (205 Fed. 195), and defendant appeals. Affirmed.

E. D. Talbott, of Elkins, W. Va., for appellant.

W. E. Baker, of Elkins, W. Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On May 17, 1913, the District Judge made a final decree enjoining the defendant, West Virginia Pulp & Paper Company, from interfering with the enjoyment of rights which he adjudged the plaintiff, Cheat Mountain Club, had acquired in the use of a large tract of land owned by the defendant company. It is unnecessary to set out the conveyances in detail, since it is admitted that the company acquired the land through Dewing & Sons, that Dewing & Sons on January 12, 1887, made a lease for 50 years to the Sportsmen's Association, that the plaintiff club acquired the rights of the Sportsmen's Association under the lease, and that the appeal depends on the construction of the lease. The lease expressed that it was made to the Sportsmen's Association "for the sole purpose of a hunting estate and the protection and propagation of game and game fish" on

the land therein described, "together with the right of way into, out of, and over and across said land; the right to build private roads into, out of, over, and across the same; the right to use water from the same; the right to cut timber upon the said land and use the same for the purpose of building one or more camps or lodges upon the said land; and the right to build, and use rent free when built, such camps or lodges as may be deemed necessary by the party of the second part; and the right to take coal and wood from the said land for the domestic use of said camps and lodges." The lease expressed the following conditions:

1. "All rights, titles and privileges under this indenture demised, are, and shall be, subject to the right of the owners of the land herein described to prevent waste and unnecessary injury to the property or commercial values thereof, through the exercise of any of said rights by the party of the second part, its agent or servants."

2. "None of the rights and privileges under this indenture granted shall in any way interfere with, limit, or hinder the owners of the said land in their operation as lumbermen or farmers or grazers thereon."

3. "It is understood that no right and privileges by this indenture granted shall prevent A. H. Winchester or his invited friends from exercising freely any and all the rights and privileges herein granted."

4. "The premises herein described and demised shall be used for the purpose herein specified and be subject to the conditions herein set out, and for none other whatsoever."

The defendant company was enjoined from interfering with the club's use of about ten acres of cleared land adjacent to the clubhouse, or cutting any of the shade trees thereon, from polluting in any manner the streams on the land, or putting in them anything injurious to fish, from interfering with the fish hatchery or fish ponds of the club or its reservoirs or conduits used to conduct water thereto, and from interfering with the club in cutting timber for the repair of its clubhouse, lodges, and other houses necessary for the enjoyment of the land for the purposes named in the lease; and the company was ordered to surrender to the club any portion of the cleared land adjacent to the clubhouse. The company assails all the provisions of the order, alleging that none of them was warranted by the lease or the other evidence.

The rights conferred on the Sportsmen's Association now held by the club, having been made subordinate to the use of their land by Dewing Bros., whose title is now held by the defendant company, the questions vital to the appeal are: First, is the use now claimed by the club within the limits fixed by the contract; and, second, if such use was permissible under the contract at the time the use was entered upon, has it come to pass that it now interferes with the superior right of the company in their operations as lumbermen, farmers, or grazers?

[1] The principles of law relevant to the construction of the contract and the other matters involved seem too plain and well settled by the Supreme Court of West Virginia and other courts for discussion or citation of authorities. It will not be doubted that the contract meant that the lessee should have such use of the land as was reasonably necessary to the enjoyment of the rights granted, and that, while this use must yield to the superior right of the owners to the full ben-

efit of the land for the purposes named, yet the owners were bound to be reasonable, and could not arbitrarily interfere with the lessee's use provided for in the contract.

We consider first whether the District Judge was right in enjoining the company from planting or otherwise interfering with the plot of open land about ten acres in area surrounding the clubhouse, and used by the club for a garden and for pasturage. The lease is not in a strict sense ambiguous, but there must always be a degree of indefiniteness in such a contract, since it is impossible for the parties contracting for privileges like those here expressed to anticipate and provide for every detail. Hence it is plain beyond all doubt that when questions arise as to the extent of the use which is reasonably necessary for the enjoyment of the right granted, and as to the extent to which the use of the lessee must from time to time yield to the superior right of the lessor to have the full use of the land as far as necessary for lumbering, farming or grazing, the court must ascertain the circumstances of the parties at the making of the contract, what they have done under it, and the changes from time to time in the reasonable requirements which one party may make of the other, and in the duties they owe to each other.

When the lease was executed, the tract of land referred to therein, containing about 50,000 acres, was almost a trackless wilderness 40 miles or more from a railroad station. These conditions made it necessary for the Sportsmen's Association to build a substantial lodge or clubhouse with outbuildings, a house for a superintendent, and several hunting lodges or camps. It would not have been possible for the association to enjoy the privileges they had acquired without horses and other domestic animals; and the transportation of food and other supplies was so evidently expensive and burdensome that it must have been contemplated that the association should use some land for a garden and to pasture stock. Accordingly, the Sportsmen's Association at a large expense constructed the buildings needed, cleared and brought into use about ten acres of land, and established a fish hatchery. The right of the Sportsmen's Association to do these things seems perfectly plain even when attention is confined strictly to the contract and the subject-matter. There was in addition evidence which appears to be worthy of credence, though disputed, that A. H. Winchester, the agent of the original lessor, had agreed to the location of the clubhouse and laid off roughly the land since used by the lessee which was regarded necessary. But even if this evidence be rejected, it is undisputed that the lessee has used the clubhouse and the land for many years with the acquiescence of the owners, and this acquiescence tends to show that the parties understood the occupance of the land to be reasonably necessary to the use contemplated.

[2] The contention now is, however, that even if the occupancy and use of the ten acres of land by the Sportsmen's Association was originally within its rights, it must yield now because the owner now needs the land for its purposes. Setting up this claim, that in the course of its development the company now requires the land to farm and for the construction and operation of a manufacturing plant, and that.

therefore the time has come when the company has a right to forbid its further use by the club and to take possession of it for its own business, the superintendent of the company wrote to the Sportsmen's Association, saying, among other things, that it needed and would take possession of all the cleared land around and near the house, and that the association would not be allowed to use the timber to repair the clubhouse and other buildings, as the right had not been conferred by the contract. In pursuance of this notice the defendant company did take possession of and plant a part of the ten acres near the clubhouse.

At this time the defendant company is using the 50,000 acres of land only to cut the timber from it, but there is evidence of its purpose to build manufacturing plants and villages to the end that it may use the timber and land to better advantage, and it insists that this ten acres is necessary to the carrying out of the plan. There is conflicting evidence on the point whether a reasonable necessity has arisen for the defendant to have the area adjacent to the clubhouse for the purposes mentioned; some of the company's witnesses testifying that the land around the clubhouse is the only land available for the purpose. The weight of the evidence is against this opinion. Indeed, the testimony of Stewart Carrs, the engineer employed by the company to locate the proposed plant, is sufficient to turn the scale, being to the effect that the land below the clubhouse is more available and desirable for the new enterprise. No doubt it would be some slight advantage to the defendant company to take the land, but that is not sufficient. The showing must be made that the use of the land is of such serious and substantial importance as to make it reasonably necessary for its business before the company will be allowed to impose upon the club the great and irreparable injury which deprivation of its use would entail.

[3] The right conferred by the contract to propagate fish connoted the right to maintain a hatchery, provided it be maintained without interference with the superior rights of the owner set out in the lease. Even if the right of the club to protection of its hatchery from pollution of the stream on which it is situated were dependent on the statute of the state of West Virginia forbidding pollution of streams or on the common law of nuisance, the club would not be restricted to the remedy of indictment, for it is evident that it has a special interest quite different from that of the public at large. But the club's right is not dependent on the statute nor the common law of tort, for it has a contractual right under the lease to protection of the fish in its hatchery from injurious pollution of the stream not necessary to the company's use of its land.

There was much apparent, but little real, conflict in the evidence on this point. Consideration of the entire evidence leaves no doubt that the company unnecessarily located its lumber camp just above the hatchery on the stream which supplied it, and unnecessarily befouled the stream with the excrement of men and beasts and other offal of the camp to the destruction of the fish.

[4] The company insists lastly that the privileges conferred by the lease to use timber to build lodges and camps did not embrace the

privilege of using timber to repair them. We agree with the District Judge that this construction would lead to absurd results. The lease was for 50 years, and it was known to be almost impossible for the Sportmen's Association to obtain lumber except from the adjacent lands. When these and the other circumstances of the parties are considered, it seems clear that they must have contemplated that the buildings would fall into decay, and that they should be rebuilt or repaired from the timber on the land.

[5, 6] The position that the plaintiff has an adequate remedy at law is untenable. If the defendant be allowed to take possession of all the land except that covered by the clubhouse, or to deprive the club of the use of timber to keep its buildings in order or to befoul the stream it uses for its hatchery, it would derive little, if any, benefit from the privileges granted by the lease. We think it elementary that, except in the special cases provided for by law, one person cannot take the property of another without his consent or continually trespass upon it and compel the owner to accept payment of money in satisfaction. The rule applies with special force where the threatened trespass would result in depriving the complainant of the enjoyment of a property right. Union Mill & Mining Co. v. Warren (C. C.) 82 Fed. 522; King v. Stuart (C. C.) 84 Fed. 546; U. S. Freehold Land & Emigration Co. v. Gallegos, 89 Fed. 769, 32 C. C. A. 470.

The decree of the District Court is affirmed.
Affirmed.